[Civ. No. 11365. First Appellate District, Division Two.—October 3, 1940.]

STERLING CARR et al., Appellants, v. P. H. LAURITSON, Respondent.

Sterling Carr, *in pro. per.*, and L. H. Matthews for Appellants.

Bardin, Harrington & Bardin for Respondent.

SPENCE, J.—Plaintiffs sought by this action to recover damages from defendant for the alleged breach of a contract for the purchase of real property. The cause was tried by the court sitting without a jury and from a judgment entered in favor of defendant, plaintiffs appeal.

The material facts for the purpose of this discussion are not in dispute. The negotiations leading up to the controversy were had between defendant on the one hand and Mr. Baird, a real estate broker in Salinas, and Mr. Hilliard, his salesman, on the other hand. Plaintiffs and defendant never met or communicated with each other until after the commencement of this action.

The uncontradicted testimony shows that Mr. Hilliard talked to defendant endeavoring to interest defendant in the purchase of a large tract of land which was represented to defendant as having approximately 900 feet frontage on the main highway leading north out of Salinas. At that time, plaintiffs were the owners of a large tract with a frontage on the east side of said highway between the main business district of Salinas and the California Rodeo Grounds. The land in that vicinity was apparently known as Carr Flats or Buell Field and portions of said land had been previously sold by plaintiffs. Plaintiff Carr testified that plaintiffs were interested in selling whatever they had left in what was known as Buell Field, but it does not appear that plaintiffs themselves knew how many acres remained unsold or how much frontage the remaining property had on the main highway. On the other hand, it does not appear that defendant knew who were the owners of any of the property which the real estate brokers were endeavoring to sell to him.

Throughout the negotiations with defendant, the brokers stressed the amount of frontage on the highway and the value of such frontage. Several conversations were had and defendant was taken out to the property on two occasions. Typical of the brokers' numerous representations concerning the frontage of the property to be sold was the following uncontradicted statement: "Look here, here is the main thing, you have 900 feet, approximately 900 feet on the highway, and this is very valuable property." They stated to defendant that he would have 18 fifty-foot lots on the main highway frontage and about 600 feet frontage on another road.

Following the negotiations, defendant and the broker signed a "Deposit Receipt" on November 14, 1938, under the terms of which defendant deposited $500 with the brokers to apply on the purchase price of $27,000 on that certain real property "known as the Carr Flats—Buell Field being 42 acres, more or less, located on North Main St.—101 Highway, Salinas". This instrument recited that it was "subject to the owner's approval" on or before December 1, 1938. The receipt was signed by the broker and was also signed by defendant in the space provided for the signature of the purchaser. There was also a space provided for the signature of the owner.

Shortly thereafter, the broker advised defendant that there was not "quite as many feet of frontage as we thought" and that said frontage of the property on the main highway was only "around 581 feet, approximately" and not approximately 900 feet. Defendant called the broker's attention to the fact that the frontage on the main highway was the "main thing" and that the fact that there was less frontage than that represented "throws the deal out of balance". As a result, defendant advised the broker that he could not "go through with it" and that he expected to have his deposit returned. To this the broker assented saying, "Sure that is all right, we expect a man here this morning that will take it. We raised it $1000." Although none of this evidence is contradicted, it appears that defendant is still waiting for the return of his deposit.

In support of their claim to damages for alleged breach of contract, plaintiffs introduced evidence showing that on November 15, 1938, being the day after the brokers and defendant signed the "Deposit Receipt", plaintiff Carr had also signed said instrument; and that on November 30, 1938, plaintiffs deposited a deed to their property in escrow and caused the brokers to advise defendant to that effect. In this connection, however, it may be stated that it does not appear that the "Deposit Receipt" was ever signed by plaintiff Cook or anyone authorized to do so on her behalf nor does it appear that said "Deposit Receipt" was ever delivered to defendant or that he was ever advised that it had been signed by the owners or any of them. It does appear that when plaintiff Carr signed said instrument, he changed the date thereon from November 14, 1938, to November 15, 1938, and

that he altered the body of the instrument by adding thereto "subject to Rec. Bonds from date of sale".

Defendant contended upon the trial that there never was any valid and binding contract between plaintiffs and defendant; that no recovery could be had upon the instrument pleaded as it had been altered by plaintiff Carr in a material respect; that the false representations regarding the frontage of said property entitled defendant to withdraw his offer or rescind and that he did so promptly; and that in any event, plaintiff's tender was insufficient as plaintiffs' title was not good and marketable as called for by the instrument. The trial court found in favor of defendant on all of said issues and entered its judgment in favor of defendant.

While plaintiffs argue numerous propositions in their brief, it appears to us that the judgment of the trial court must be affirmed as the uncontradicted evidence required that judgment be entered in favor of defendant and said evidence would not have supported a judgment in favor of plaintiffs. Plaintiffs were suing upon the theory that an enforceable contract had been entered into by plaintiffs and defendant and that defendant had breached such contract. The trial court found that "there was no valid binding contract made and entered into between the plaintiffs and defendant". In our opinion said finding is supported by the evidence. At most, defendant made a mere offer or proposal to purchase real property, which offer could be revoked at any time before the acceptance thereof was communicated to him. (Civ. Code, sec. 1586.) No acceptance of said offer was ever communicated to him unless the notification to him on November 30, 1938, that plaintiffs had deposited a deed may be considered such communication. But that notification followed defendant's notice to the brokers, who were the persons with whom defendant had dealt and the only persons known to him in the transaction, that he could not "go through with it" and that he expected to have his deposit returned. To this, the brokers consented. It was not essential that defendant obtain the consent of the brokers or the owners to the revocation of his offer (*Barsotti* v. *Vedovi,* 108 Cal. App. 308 [291 Pac. 585]) and we are of the opinion that said revocation by notice to the brokers was a sufficient revocation under the circumstances. In view of the conclusions which we have

reached, it appears unnecessary to consider the other points raised.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.