[Civ. No. 12148. First Dist., Div. One. Oct. 5, 1942.]

F. W. HOGG, Appellant, v. REAL ESTATE COMMIS-
SIONER OF THE STATE OF CALIFORNIA, Re-
spondent.

Alfred J. Harwood for Appellant.

Earl Warren, Attorney General, and R. L. Chamberlain, Deputy Attorney General, for Respondent.

KNIGHT, J.—The appellant, F. W. Hogg, was the owner of certain real property in Redwood City. He was also a

contractor and builder, and the holder of a real estate broker's license. On May 16, 1941, following negotiations extending over a period of two or three weeks, Christian Jachens and his wife entered into a written agreement with appellant as seller to purchase a lot belonging to appellant, upon which appellant was to construct a home for the Jachens. The full amount of the agreed purchase price was $4,575, and the Jachens made a down payment of $330. For reasons which will hereinafter appear, the sale was not consummated, and the Jachens demanded the return of the down payment. Appellant refused to pay back the money, and on August 2, 1941, Mrs. Jachens signed a verified complaint against appellant with the Real Estate Commissioner, and after a hearing appellant's license as a real estate broker was revoked. Thereupon, under the authority granted by the terms of the California Real Estate Act, appellant filed a petition for a writ of review in the superior court, but in view of the law as laid down in *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal. (2d) 557 [59 P. (2d) 119], the parties stipulated that the proceeding instituted by petitioner be treated as a proceeding in mandamus, and that it be submitted to the court for determination on a transcript of the evidence taken before the Real Estate Commissioner. Thereafter and on November 21, 1941, the court entered judgment denying appellant the relief sought and dismissing the proceeding. From said judgment this appeal was taken.

Section 12 of the California Real Estate Act (Stats. 1919, p. 1252, as amended; Deering's Gen. Laws, 1937, Act 112) enumerates twelve separate grounds upon which the Real Estate Commissioner may suspend or revoke a broker's license after an investigation initiated on his own motion or upon the written, verified complaint of any person. The twelfth enumerated ground for suspension or revocation is that the licensee has "Acted or conducted himself in a manner which would have warranted the denial of his application for a license, or for a renewal thereof"; and section 9 of the act prescribing the qualifications of an applicant for a license requires that he shall be "honest, truthful and of good reputation." The commissioner's order revoking appellant's license was based on the conclusion, as stated in the order, "That defendant conducted himself in a manner *in this transaction* which would have warranted the denial of his application for a license, in violation of subsection 12 of section 12 of the

California Real Estate Act'' (italics ours); and the basis of the trial court's judgment as set forth in the findings is that ''. . . from the evidence produced at the hearing the commissioner was entitled to find that in failing to refund or return the $330 deposit when the property could not be financed . . . the petitioner was dishonest.''

With respect to the merits of the case, appellant took the position before the commissioner and the trial court and he now urges in support of his appeal that the transaction involving the purchase and sale of the property was carried on by and with him as owner, and not as a real estate broker; that the down payment was made to and accepted by him as owner, and that subsequently the agreement of purchase and sale was repudiated by the Jachens over his protest and without legal cause. Appellant contends, therefore, that the circumstances relating to the repudiation of the agreement by the Jachens reasonably justified the belief that he was entitled to retain the down payment, and if so, that his refusal to refund the same cannot be deemed to be an act of dishonesty as the word ''dishonesty'' is generally understood and defined.

It is our opinion that the undisputed facts of the case support the position so taken by appellant. In this respect the record shows the following: Sometime in April, 1941, Jachens opened negotiations with appellant regarding the purchase of a home on terms, explaining that he and his wife could not afford to make monthly payments in excess of $30. Appellant showed him several homes, but he said they were too small, and eventually Jachens and his wife picked out a lot belonging to appellant and appellant agreed to purchase twelve feet of the adjoining lot and build them a home on the combined property. On April 30, 1941, they paid appellant $100, and later $200 more; and on May 16, 1941, the parties signed a written agreement reading as follows: ''Deposit Receipt for Purchase of Real Property. Redwood City, California, May 16, 1941. Received from Christian Jachens, the sum of $300.00, as a deposit for the purchase of the following described property situate in Redwood City County of San Mateo State of California, to-wit: East 27 ft. of Lot 15 and all of Lot 16—Block B of Oak Villa Homestead with house to be erected as per plans and specifications herewith submitted, for the full consideration of $4575.00. The remainder of the purchase price is to be paid within........days from

the date hereof, as follows, to-wit: $175.00 to be paid when house is completed and the balance to be a Housing loan. . . .'' It was signed ''F. W. Hogg, Seller'' and at the end of the agreement was the following: ''I agree to purchase the above described property on the terms and conditions herein stated.'' This was signed by Christian Jachens and his wife Johanna Jachens; and at the time of the signing thereof they paid appellant an additional $30. Thereupon the Jachens made application for a Federal Housing Administration loan (F. H. A.). Appellant prepared the application therefor, and the Jachens signed it, and it was presented to the First National Bank of San Mateo County at Redwood City. The application was dated May 20, 1941, and in due course was forwarded by the bank to the F. H. A. Later the F. H. A. sent the following communication to the bank: ''Notice of Rejection of Application. . . . This is to advise that a [  ] preliminary examination, [x] final examination . . . of your application for mortgage insurance, identified by the serial number above, indicates that the transaction does not qualify for insurance within the scope of the National Housing Act for the following reasons: Based upon a loan of $3300, the maximum amount which we can insure, our processing indicates that the mortgagors will require approximately $1085 to close the transaction, and their financial statement indicates that such a sum is not available. We are returning herewith one set of Plans and Specifications submitted with the application.'' Thereupon and on June 17, 1941, the bank wrote the Jachens as follows: ''Today we received from the Federal Housing Administration Notice of Rejection of your application for an F. H. A. loan, with the following notation: 'Based upon a loan of $3300, the maximum amount which we can insure, our processing indicates that the mortgagors will require approximately $1085, to close the transaction, and their financial statement indicates that such a sum is not available.' Also they state that the marketability is adversely affected by the class of occupants in the immediate neighborhood.'' As will hereinafter appear, the last sentence referred to the fact that a colored family was living about two blocks from the property.

On the day the bank's letter reached the Jachens' home, but before Jachens had seen it, appellant called on him at his work and told him that he would receive a letter from the bank rejecting the loan but not to ''get worried about it,

they never should have sent it," that "the property hasn't been rejected," that "it was just because I [appellant] have built some smaller homes there they don't want me to build big homes"; that he had resubmitted the application already without Jachens' knowledge, and that it would go through in about two weeks. Later on Jachens read the bank's letter, and after reading it told appellant that having learned through the F. H. A. that there were colored people living in the neighborhood they were no longer interested in buying the property and that the deal "was off." Meanwhile the application had been resubmitted by the bank to the F. H. A. and on June 24, 1941, the F. H. A. wrote the bank as follows: "We are in receipt of your letter of June 19, requesting further consideration of the above captioned application. We refer you to our letter which accompanied the Notice of Rejection, upon which it was stated: 'Marketability adversely affected by class of occupancy in immediate area.' Lacking information that would tend to change our decision in this regard, further consideration of this application is not warranted." The Jachens learned of the second rejection through inquiry at the F. H. A. offices, and thereupon they notified Mr. Morrish, the vice-president of the bank, that they wanted to withdraw their application; that they did not care to go ahead with the loan. Following the second rejection and prior to learning that the Jachens had withdrawn their application, appellant called at the F. H. A. offices in San Francisco to urge favorable action on the application for the loan, and according to appellant's testimony, which in this respect was not contradicted, Mr. McNamara, the official in charge, told him: "We have already passed on that subdivision, there is no reason why there should be any objection to this at all, but if there is it can be easily overcome. All you have to do is for your banker to send in a letter along this line stating the reason and I personally will go down there and look at it and if there is any objection to the neighborhood you can go out and get them to sign they will not sell to anybody but the white race. But . . . in this case this is two blocks away from where that colored person lives, and I don't see why that should affect it because it isn't between them and town, it is farther out." Acting on this advice appellant addressed a letter to the bank, which on June 27, 1941, was presented to the bank by appellant's agent, but Morrish told him that Jachens had already called and requested not to have the

application submitted again. Thereafter the Jachens made demand for the return of the deposit, and according to Jachens' testimony, appellant told him he would return the deposit if Jachens would resubmit the application again; but Jachens refused to do so; and on August 2, 1941, Mrs. Jachens signed the complaint asking the Real Estate Commissioner for the hearing, which resulted in the revocation of appellant's license.

"Dishonesty" necessarily includes the element of bad faith. As defined in the dictionaries and in judicial decisions, it means fraud, deception, betrayal, faithlessness. (See Webster's and Century Dictionaries; *American Surety Co.* v. *Joy Lodge No. 87, F. & A. M.*, 102 Ind. App. 82 [196 N. E. 356, 361]; *State ex rel. Hundley* v. *Jay*, 104 Ind. App. 259 [10 N. E. (2d) 737, 741]; *Bank of California Nat. Assn.* v. *Portland Hide & W. Co.*, 131 Or. 123 [282 Pac. 99, 104], citing numerous authorities.) As put by the court in *Alsup* v. *State*, 91 Tex. Cr. 224 [238 S. W. 667], " 'Dishonesty' denotes an absence of integrity; a disposition to cheat, deceive, or defraud; deceive and betray." And that such was the meaning intended to be given the word "dishonest" as used in section 12 of the Real Estate Act is apparent from the several subdivisions thereof prescribing the grounds for suspension or revocation of licenses, for all but two of them have as their basis acts involving bad faith; that is, misrepresentation, fraud, and deceit. The remaining ones relate to conviction of felony and commingling of funds and property.

Here respondent makes no claim that appellant was guilty of any fraud, deceit, or bad faith of any kind in negotiating or securing the agreement of purchase and sale, or in the efforts made to obtain the loan for the Jachens. In fact, as the hearing before the commissioner was about to be concluded, the commissioner so stated. But it is contended that there was a failure of consideration, and therefore the Jachens were entitled to the return of the down payment; and that the refusal of appellant to refund it justified the finding that he was dishonest. In this respect the respondent in its brief goes on to say: "It appears to us that this is a case where both parties to a contract were prevented from performing by circumstances over which they had no control. That there was a failure of consideration which entitled the proposed purchasers to a return of their deposit and a failure to make such return by a real estate broker in Mr. Hogg's position,

was dishonest dealing. . . ." And in support of such position respondent cites the rule "that where a seller cannot carry out his contract, a refund of the deposit is in order," citing *Carr* v. *Lauritson,* 41 Cal. App. (2d) 31 [106 P. (2d) 19]. In other words, respondent's position is apparently based upon the assumption, first, that under the terms of the agreement between the parties appellant was obligated to obtain the loan, and secondly, that the failure to obtain the loan constituted a failure of consideration. However, as will be noted, the agreement contains no provision as to which of the parties thereto was to obtain the loan. It would appear, therefore, to be a debatable question as to whether or not appellant was obligated to do so, and obviously such question can be properly determined only in an action for the recovery of the down payment. Regardless, however, of the question as to which of the parties was obligated to obtain the loan, the evidence shows that before efforts to that end were exhausted the Jachens repudiated the agreement, not upon the ground that the loan had not been or could not be obtained, but upon the ground that having learned that a colored family lived in the neighborhood they did not want to buy the property; that is to say, they took the stand that even though the loan was obtainable they would not go on with the deal for the reason stated by them. In connection with the question of whether or not the loan was obtainable, it should be here stated that the vice-president of the bank testified that his experience had proved that the F. H. A. would very often not make a favorable commitment until after several resubmissions. It is apparent, therefore, that a second debatable question arose. as to whether the Jachens, having repudiated the agreement on the ground mentioned, were entitled to a refund of the down payment, and that question also can be properly determined only in an action to recover the down payment. In those circumstances, and in the absence of any evidence showing bad faith, it is our conclusion that the finding that appellant was, in this transaction, dishonest, cannot be sustained. Stated another way, it cannot be held that appellant is guilty of "dishonesty" for refusing to pay back a sum of money which in good faith he claims he is entitled to retain. Whether or not the legal objections raised by appellant against refunding the down payment are well taken must be determined, of course, in an action which may be brought to recover that sum. They are not issues which may be here decided; and

what has been here said should not be construed as indicating the expression of any views thereon.

The determination of the issues already discussed makes it unnecessary to inquire into the other grounds urged in support of the appeal.

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.