[L. A. No. 19719.   In Bank.   Sept. 18, 1946.]

MIDWAY SCHOOL DISTRICT OF KERN COUNTY et al.,
Appellants, v. GLENN A. GRIFFEATH, Respondent.

Siemon, Maas & Siemon, Alfred Siemon, Walter L. Maas, Jr., and Oscar F. Catalano for Appellants.

Borton, Petrini, Conron & Borton for Respondent.

SHENK, J.—On November 1, 1944, the plaintiffs, as members of the governing board of Midway School District of Kern County, served on the defendant, a permanent teacher employed by the district, 'a written statement of charges as constituting causes for his dismissal, and notice of intention to dismiss him on December 2, 1944. On November 29th the defendant demanded a hearing on the charges and the plaintiffs filed a complaint in the superior court pursuant to section 13529 of the Education Code (Stats. 1943, p. 570). The defendant answered, a trial was had, and judgment in his favor was entered from which the plaintiffs have appealed. The evidence produced at the trial shows the following facts:

The defendant had been employed by the Midway School District for more than 20 years. He taught mathematics, physical education and shop. He furnished without pay much extra time in teaching at night, and in school affairs and exhibitions. There was no question of his competency and fitness for the position he held nor of his cooperation and helpfulness in school curricula and other activities. He suffered chronically from hives due to a food allergy, but had missed no more than 10 days of school in the 20 years. During the five years preceding the events hereinafter related he had had no vacation due to his attendance at summer school and work in industry. During the latter activity he had received an injury resulting in a condition which gave him pain. His physical condition was known to the school principal and others, and on at least one occasion necessitated temporary relief from teaching before a mixed class. In each of two or three prior years he had attempted to obtain a few days leave of absence, but was unsuccessful for the reason that he was considered not wholly incapacitated from performing his duties. In May, 1944, he consulted a physician for possible alleviation of his condition, but took no treatment

at that time. On Saturday, September 23, 1944, he called at the hospital for an appointment, but the doctor was away and he could not obtain a definite appointment until Monday, October 2d. On Monday, September 25th, at the invitation of the father of one of the pupils, he decided to go on a deer hunting trip in Nevada on a promise from his prospective companion to have him back on Monday, October 2d. After the close of school on Wednesday, September 27th, he placed the following note on the principal's desk:

"On account of coming illness I find it necessary to be absent from school the rest of this week. My lesson plans are on my desk. Will try to be back Monday but will probably be absent again on Wednesday until the next Monday as I will probably enter the hospital under Dr. Johnson for observation."

He left the same evening for Nevada with his companion. On the following Saturday a snow storm arose which prevented their leaving the deer camp until Wednesday. It was impossible to communicate the fact of his enforced absence to the principal. He arrived home Thursday evening and returned to his classes on Friday morning, October 6th.

The governing board deducted $96 from the defendant's salary for the six days' absence without leave and requested his resignation. Upon his refusal to resign the board adopted a resolution charging him with (1) unprofessional conduct; (2) dishonesty; and (3) persistent violation of the school law and regulations. The hearing in the trial court was had on those charges.

. The court found the foregoing facts and concluded that they did not constitute sufficient cause for dismissal.

The judgment in effect was an adjudication that the plaintiffs may not dismiss the defendant. The plaintiffs contend that the trial court had no power to make such an adjudication; that the court's power was circumscribed by the rules relating to certiorari and mandamus, and that judicial investigation was limited to whether the board properly exercised its jurisdiction. It is claimed that if facts existed which, as here asserted to have been found, were sufficient support for the board's determination to dismiss, the trial court had no power to disturb it. The plaintiffs specially refer to the fact, also found by the court, that the indisposition of the defendant was not sufficient to prevent continued performance of his duties and that he used his indisposition as an

excuse to absent himself for the purpose of going deer hunting for at least two school days. A school regulation provided that teachers should not be absent without leave except on account of illness incapacitating them from performance of their duties. The substance of the court's finding is that the defendant's conduct was a violation of that regulation.

The position of the plaintiffs assumes the existence of statutory provisions which are lacking in the present law. Long prior to the adoption of the present Education Code, and pursuant to the 1921 amendment of section 1609 of the Political Code, included in the former Teachers' Tenure Act, the law afforded a retrial in the superior court after a hearing before the board of education on charges similar to those here involved. In *Saxton* v. *Board of Education,* 206 Cal. 758, 768 [276 P. 998], it was stated that such a trial was not an appeal from the board's determination, and that the then existing statutory provisions deprived the board of the power to pass finally upon the dismissal of an accused teacher.

The case of *Board of Education* v. *Ballou,* 21 Cal.App.2d 52, 55 [68 P.2d 389], noted the significant changes brought about by the 1935 amendment of the School Code (Stats. 1929, ch. 23, Stats. 1935, pp. 1886, 1887) whereby ''Administrative school officials were deprived of the power to dismiss permanent teachers for cause and it was made necessary for the governing board, in order to bring about a dismissal, to file a complaint in the superior court 'asking that the court inquire into such charges and determine whether or not such charges are true, and if true, whether or not they constitute sufficient grounds for the dismissal of such employee, under the provisions of this code, and for judgment pursuant to its findings.' The legislature has placed upon the judges the duty of determining whether a teacher should be dismissed when charges such as incompetency are filed.'' (See, also, *Fresno City H. S. Dist.* v. *De Caristo,* 33 Cal.App.2d 666 [92 P.2d 668].) In *Board of Education* v. *Mulcahy,* 50 Cal.App.2d 418, 421 [123 P.2d 114], it was said that the interposition, between the initial charge and the final order, of a judicial determination as to the existence of proper grounds for dismissal is supported by both reason and authority, citing *Wheatley* v. *Superior Court,* 207 Cal. 722 [279 P. 989].

The changes enacted by the School Code have been carried into the Education Code adopted in 1943. (Stats. 1943, ch. 71.) Section 13521 provides that no permanent employee shall

be dismissed except for one or more of the enumerated causes which include those here involved. Upon the filing of written charges the governing board of the school district may give notice to the permanent employee of its intention to dismiss him at the expiration of 30 days from the service of the notice unless a hearing is demanded. (§ 13522.) If the employee does not demand a hearing within the 30 day period he may be dismissed upon the expiration of that time. (§ 13527.) However, the employee may demand a hearing, in which event the board has the option either to rescind its action or to file a complaint in the superior court setting forth the charges and asking that the court inquire into the charges and determine whether they are true, whether they constitute sufficient grounds for the dismissal of the employee under the provisions of the code, and that judgment be entered pursuant to the findings. (§ 13529.) Section 13551 provides that after the trial the court shall enter judgment, which "shall determine whether or not the governing board may dismiss the employee." Section 13552 reads: "If the judgment determines that the employee may be dismissed, the governing board may dismiss him upon entry of the judgment. Otherwise the employee may not be dismissed as the result of the charges or of any charges which could have been made or heard at the hearing."

The foregoing cited cases and provisions of the Education Code afford a complete answer to the contention of the plaintiffs that the trial court did not have the power to determine whether the defendant may be dismissed by the board. Where an accused teacher demands a hearing, the duty of determining the issues as to the truth of the charges and their sufficiency to support a dismissal is placed by the statute on the superior court, whose judgment, appropriate to the evidence and the findings, terminates the matter. In such cases the board has the administrative function of initiating the charges, of filing the complaint on request, and of compliance with the judgment of the court—with the qualification that a judgment determining that the board may dismiss the defendant is not to be deemed a matter of direction or compulsion.

On an appeal from the judgment the review is not to discover whether facts exist which sustain the action of the board, but whether the evidence on the court hearing supports the findings and judgment of the court.

■ The plaintiffs contend that the conclusion that cause for dismissal does not exist is inconsistent with the findings and therefore, that the findings do not support the judgment. They point to the finding that the defendant's condition did not prevent the performance of his duties and that he used it as an excuse to go deer hunting, and to the evidence that he admitted before the board that he was not sorry he had gone and that under similar circumstances he might feel impelled to do the same thing again. They contend that these facts support the charges of unprofessional conduct, dishonesty and persistent violation of regulations, and are inconsistent with the conclusion of the trial court that the facts do not constitute sufficient cause of dismissal. However, the court in effect also determined that the one instance of violation under the circumstances, together with the frank answers indicating the defendant's state of mind, did not constitute unprofessional conduct or dishonesty such as would unfit him for the performance of his duties as a teacher. An approved definition of dishonesty connotes a disposition to deceive. (*Hogg* v. *Real Estate Comm'r,* 54 Cal.App.2d 712, 717 [129 P.2d 709].) That the defendant was guilty of a measure of deception may not be doubted and his conduct was reprehensible when measured by the high standards of his profession. But whether the Legislature intended that all deception, however slight, should result in dismissal is doubtful. A judicial question is thus presented. The trial court having the responsibility in the premises, chose to relieve the defendant from the rigorous result of his misconduct and we are disposed not to disturb its judgment in this respect.

The court concluded that one instance of disobedience of the school regulations did not necessarily show persistence. Persistence, in the sense intended, is referable to past conduct. The Legislature undoubtedly intended that opportunity for correction be available and refrained from providing for dismissal for a single violation of regulations, or until repeated violations could be considered persistent. In *Fresno City H. S. Dist.* v. *De Caristo, supra* (33 Cal.App.2d 666, at 675), it was said that two absences without leave may not be considered a persistent course of conduct. (See *Fresno City H. S. Dist.* v. *Dillon,* 34 Cal.App.2d 636 [94 P.2d 86] ; *cf. Evard* v. *Board of Education,* 64 Cal.App.2d 745 [149 P.2d 413], where the teacher absented herself without leave for a period of seven months.) A teacher who is "continually insubordinate . . .

may seriously affect the discipline in a school, impair its efficiency, and teach children lessons they should not learn." (*Johnson* v. *Taft School Dist.*, 19 Cal.App.2d 405, 408 [65 P.2d 912].) The emphasis is on "persistent" and "continually." The trial court expressly found that the defendant was not motivated by an attitude of insubordination. We conclude that the findings and conclusions are not fatally inconsistent, that they are supported by the evidence and in turn support the judgment.

Both the governing board of the school district and the trial court have followed the procedure prescribed by the Education Code and the judgment is pursuant to the authority vested in the trial court by the provisions of that code.

The judgment is affirmed.

Carter, J., Traynor, J., and Schauer, J., concurred.

SPENCE, J.—I dissent.

Under the undisputed facts in the present case, I am of the opinion that the judgment of the trial court must be reversed. These undisputed facts required findings by the trial court that certain of the charges made against respondent were true, and further required the conclusion by the trial court that such charges constituted sufficient grounds for dismissel under the provisions of the Education Code. (Ed. Code, § 13529.) Upon such findings and conclusions, the judgment of the trial court should have been that "the governing board may dismiss the employee." (Ed. Code, § 13551.)

The trial court, however, apparently misconceiving the relative functions of the school board and of the court under the pertinent sections, not only made findings and conclusions, some of which are inconsistent among themselves and some of which are wholly contrary to the undisputed facts, but further made certain findings which could have no relevancy except upon the erroneous theory that the trial court had the power not only to determine the matters above mentioned but also had the power and duty to determine the penalty, if any, which should be imposed.

The majority opinion sustains the judgment upon arriving at the conclusions that "the findings and conclusions are not fatally inconsistent" and that "they are supported by the evidence." In arriving at these conclusions, the majority opinion stresses the facts which might be considered by the

board in ultimately fixing the penalty, if any, to be imposed by the board following a court determination that the board "may dismiss the employee" but which facts should not have been considered by the trial court and should not be considered by this court in determining whether the charges were true and whether they constituted sufficient grounds for dismissal under the code. While the procedure set forth in the Education Code contemplates the exercise by the trial court of broad powers in determining questions of fact and of law, the function of the trial court ends with such determination. In other words, the trial court has the function of determining whether the board *may* dismiss the employee, but it has not the function of determining whether the board *should* dismiss the employee. The latter function of fixing the penalty, if any, is an administrative function which remains with the board. This is made manifest by the provisions of section 13552 of the Education Code, which provides that "If the judgment determines that the employee may be dismissed, the governing board may dismiss him upon entry of the judgment." The true function of the court is apparently recognized in that portion of the majority opinion where it is said that "a judgment determining that the board may dismiss the defendant is not to be deemed a matter of direction or compulsion," but the majority opinion also quotes with apparent approval the language used in *Board of Education* v. *Ballou*, 21 Cal.App.2d 52, at page 55 [68 P.2d 389], where it was said: "The legislature has placed upon the judges the duty of determining whether a teacher *should* be dismissed when charges such as incompetency are filed." (Emphasis added.) This language was dictum in the Ballou case and should be disapproved rather than quoted with approval, as the word "should" was obviously used in place of the word "may." That case arose upon demurrer and the question under discussion was not before the court. Neither was the question involved in *Board of Education* v. *Mulcahy*, 50 Cal.App.2d 418 [123 P.2d 114], in which the language of the Ballou case was quoted at page 421. There the court affirmed a judgment "that the board might dismiss the defendant as an employee of the school district." (P. 420.)

As above indicated, the pertinent facts with respect to certain charges were undisputed. Among other charges, respondent was charged with dishonesty and unprofessional conduct. Stripped of all irrelevant matters which were in-

troduced in evidence, it appears from the undisputed evidence that because of respondent's desire to go deer hunting, he absented himself from his duties for that purpose for several days without permission, upon the admittedly false pretext, embodied in his letter to the principal, that his absence was necessitated solely by illness; that upon his return, he adopted and maintained a defiant and insubordinate attitude in his meetings with the principal and with the board, and made no apology for his unauthorized absence or for the false statements contained in his letter, but on the contrary stated ''I am not sorry''; ''I would do it again under the same conditions''; and ''If you fire me that is all right.''

In its findings, the trial court found that respondent had written the letter to the principal containing the false statements and had thereafter voluntarily absented himself from his duties for at least part of the time ''without legal reason or excuse,'' and that such voluntary absence ''was without the permission or assent of the said principal or school board and was not because of illness or indisposition but was for the purpose of going on said hunting trip.'' But as to the specific allegations relating to the defiant and insubordinate attitude of respondent after his return, which allegations were contained in the complaint and were further incorporated into the complaint by reference to the resolution of the board, which was attached, the trial court made no specific findings but found generally that all other allegations were ''untrue, except in the respects in which said allegations are elsewhere in these findings found to be true.'' These last-mentioned general findings were contrary to the undisputed evidence and cannot be sustained. Likewise contrary to the undisputed evidence is the general finding ''that it is not true that said defendant was motivated at any time by an attitude of insubordination.''

The above-mentioned undisputed evidence left for the determination of the trial court no real issue of fact with respect to the truth of the specific charges to which such testimony related. The question presented to the trial court was rather one of law than one of fact, and concerned the question of whether such admitted conduct constituted dishonesty and unprofessional conduct within the meaning of section 13521 of the Education Code. That question remains a question of law on this appeal, and the question is not foreclosed

by the trial court's inconsistent and unsupported conclusion, contained in the findings of fact, that "it is not true that defendant has been guilty of unprofessional conduct or dishonesty."

While there may be situations in which the question of whether certain acts constitute unprofessional conduct and dishonesty may not be a question of law alone, such is not the case here. Under approved definitions respondent was unquestionably guilty of dishonesty in writing the letter to the principal containing false representations which were intended to deceive. (See *Hogg* v. *Real Estate Comm'r*, 54 Cal.App.2d 712, 717 [129 P.2d 709].) This is apparently conceded in the majority opinion, where it is stated "That the defendant was guilty of a measure of deception may not be doubted and his conduct was reprehensible when measured by the high standards of his profession." Furthermore, it is difficult to conceive of any more flagrant unprofessional conduct than that evidenced by such dishonesty, coupled with total disregard of the rules, and the defiant and insubordinate attitude adopted and maintained by respondent throughout his meetings which followed with the principal and the school board. It therefore appears that the trial court here had no alternative but to declare, as a matter of law, that the undisputed facts constituted dishonesty and unprofessional conduct. To declare otherwise under the circumstances would mean that the school board, entrusted with the important duty of supervising the education of the younger generation, would be powerless to dismiss the admittedly offending, defiant and recalcitrant teacher and would be seriously hampered in maintaining discipline and efficiency. In this connection, the following language used in *Johnson* v. *Taft School Dist.*, 19 Cal.App.2d 405, at page 408 [65 P.2d 912], is pertinent: "A board of education is entrusted with the conduct of the schools under its jurisdiction, their standards of education, and the moral, mental and physical welfare of the pupils during school hours. An important part of the education of any child is the instilling of a proper respect for authority and obedience to necessary discipline. Lessons are learned from example as well as from precept. The example of a teacher who is continually insubordinate and who refuses to recognize constituted authority may seriously affect the discipline in a school, impair its efficiency, and teach children lessons they should not learn. Such conduct may unfit a

teacher for service in a school even though her other qualifications may be sufficient. 'Book learning' is only a phase of the important lessons a child should learn in a school.''

As I read the majority opinion, it fails to distinguish between the functions of the school board and of the court in the plan set forth in the sections of the Education Code. It recognizes that respondent was guilty of what is termed ''deception,'' ''misconduct'' and ''reprehensible'' conduct, but it sustains a judgment holding that the school board has no power to dismiss respondent. It states that the trial court in effect determined that the conduct of respondent ''did not constitute unprofessional conduct or dishonesty *such as would unfit him for the performance of his duties as a teacher.* . . . The trial court having the responsibility in the premises, *chose to relieve the defendant from the rigorous result of his misconduct* and we are disposed not to disturb its judgment in this respect.'' (Emphasis added.) It was the function of the trial court to determine only whether respondent was guilty of unprofessional conduct and dishonesty, and to leave to the school board the determination of whether respondent should be dismissed because of such unprofessional conduct and dishonesty. As indicated above, the trial court had no alternative but to determine that he was thus guilty under the undisputed facts. But it was no part of the function of the trial court to determine whether such unprofessional conduct and dishonesty were ''such as would unfit him for the performance of his duties as a teacher'' or ''to relieve the defendant from the rigorous result of his misconduct.'' That function clearly rested with the school board, in its discretion, following an appropriate judgment of the trial court.

Respondent does not yet appear to appreciate the seriousness of his offenses, as he claims on this appeal that at most his ''conduct amounts to no more than one absence without leave.'' It may be assumed, for the purpose of this discussion, that if the undisputed evidence showed nothing more than one short absence without leave, the trial court would have properly entered judgment in his favor. But the very fact that respondent fails to appreciate the seriousness of his deliberate falsehoods uttered to deceive his principal or the seriousness of his defiant and insubordinate attitude, adopted and maintained toward his principal and the school board following the uttering of said deliberate falsehoods and fol-

lowing the taking of his absence without leave, tends to show justification for the action of the school board in passing a resolution containing an expression of its intention to dismiss respondent. Whether respondent's attitude has changed and whether the final action of the board should be one imposing the penalty of dismissal are matters which are committed to the school board for determination following the judgment of the trial court determining that such conduct constituted unprofessional conduct and dishonesty. (Ed. Code, §§ 13521, 13552.) It is not the function of the trial court nor of this court to determine the circumstances under which unprofessional conduct or dishonesty should be condoned or to compel the school board to retain an offending teacher regardless of his continued defiant and insubordinate attitude toward those who are charged with the duty of dealing with such derelictions and of maintaining the high standards of our educational system.

For the reasons stated, I am of the opinion that the judgment of the trial court should be reversed.

Gibson, C. J., and Edmonds, J., concurred.