[Civ. No. 7388. Second Appellate District, Division One.—July 29, 1932.]

ISABEL M. TROENDLE, Respondent, v. MOSTYN C. H. CLINCH et al., Appellants.

Gilbert A. McElroy, Porter T. Kerckhoff, Alfred E. Dennis and Leonard Wilson for Appellants.

Phil S. Gibson for Respondent.

TAPPAAN, J., *pro tem.*—Plaintiff and respondent here recovered a judgment as against defendants and appellants, Clinch and Thurtle, real estate brokers and copartners, and one Donnell, the mother-in-law of defendant Clinch. No judgment was had as against defendant Weadon.

The evidence as presented upon this appeal discloses the following facts. Plaintiff for some years prior to the transactions here involved was the owner of a certain house and lot in the city of Los Angeles and had attempted to sell or trade the same. She had at different times listed this property with various real estate agents for sale. Plaintiff was directed to defendants Clinch and Thurtle by a real estate firm with whom she had had some business transaction, some time between the 1st and 10th of April, 1927. On April 12, 1927, defendant Clinch first learned that a fifty-year lease of certain property situated upon Western Avenue in the city of Los Angeles could be secured for the sum of $6,500, though Clinch did not succeed in contacting the owner of this lease until April 19, 1927. On April 12, 1927, the day he first learned that the Western Avenue lease could be purchased, defendant Clinch called plaintiff to his office and informed her that a very rich man, who had been recently married, wished to purchase a nice home; that this man specialized in leases and wished to trade for a home a lease he had upon Western Avenue; that this lease could be exchanged for her property. Plaintiff told defendant Clinch at this time, and at subsequent interviews, that she would have to rely upon him to advise her in the matter of the exchange. On April 14th defendant Clinch brought defendants Weadon and Donnell to plaintiff's home and introduced them to her as Mr. and Mrs. Weadon, and showed them the house and told plaintiff that Weadon

was the owner of the Western Avenue lease he had told her about. The next day Clinch told plaintiff he was mistaken about Weadon being married, but that he was engaged to Mrs. Donnell. On April 22d Clinch secured a listing of the Western Avenue lease from the owner at the stated price of $6,500. On the same day, April 22d, Clinch told plaintiff that Weadon was willing to make the exchange. On April 23d at Clinch's direction plaintiff made from other persons inquiries as to the value of the lease, but was informed by them that they knew nothing as to its value and that she would have to rely upon her agent, Clinch, as to the exchange. Of this fact she informed Clinch. In the afternoon of the same day, at defendants Clinch and Thurtle's office, there being present defendant Clinch, plaintiff and another agent who took no important part in the transaction, the exchange agreement was signed by plaintiff. Clinch read parts of the agreement to plaintiff, but, it would appear, plaintiff never read, nor, was the whole agreement read to her, at this time. The agreement was the usual form of exchange agreement and called for the exchange of plaintiff's property for the lease. Defendant Clinch never informed plaintiff of the true value of the lease or who was the true owner, and at all times represented to her that it was of the value of $35,000, which was the valuation plaintiff placed upon her property. Clinch told plaintiff that Weadon was the owner of the lease. It is true that defendant Clinch in his testimony denied many of the statements made by plaintiff as to the transaction, though the testimony of the other witnesses who testified at the trial did not, as to the material parts of her testimony, tend to contradict her testimony. At the time of the signing of the exchange agreement plaintiff and the other agent present at the time testified that Clinch borrowed from plaintiff the sum of $2,850 and agreed to return to her $3,000 at the close of the escrow. Defendant Clinch testified that this sum was merely deposited as a proof of good faith on the part of plaintiff and that the sum of $150 returned to her in the escrow in·addition to the $2,850 was in fact a reduction of his commission.

Weadon's name appears in the escrow, but it was signed by defendant Clinch in all instances. Clinch also signed Weadon's name in the acceptance of the exchange agreement. Weadon testified that he had no personal knowledge as to

these matters. The evidence shows that defendant Clinch secured a loan from a bank of the sum of $5,500, which, taken with the funds secured from plaintiff, enabled him to purchase the lease of the Western Avenue property from the owner and close this part of the escrow. This loan from the bank was secured by an order as against funds to be obtained from a mortgage to be secured upon plaintiff's property. In the escrow the title to plaintiff's property was directed to be taken in the name of defendant Donnell, defendant Clinch explaining to plaintiff that Weadon was making a wedding gift to Mrs. Donnell. Before the close of the escrow a loan of $12,500 was secured upon plaintiff's property. Plaintiff noticed that the assignment of the lease was from one Yanow and not Weadon. This Clinch explained was due to the fact that Weadon did not have his papers straight and that he, Clinch, had had them fixed to protect plaintiff. From the escrow, plaintiff, in addition to the assignment of the lease, received $3,000 and the firm of Clinch and Thurtle the sum of $8,863.03, that latter amount being the sum remaining after deducting commissions paid to another agent and escrow and title charges. Out of the sum paid to Clinch and Thurtle was repaid the loan of $5,500 made by the bank.

On July 11, 1927, defendant Donnell sold the property she had acquired from plaintiff through the escrow for the sum of $20,000. In fixing the sum to which it found plaintiff was entitled the trial court, it would appear, deducted from the $20,000 which was obtained for the property secured from plaintiff, the sum of $6,500 paid for the lease of the Western Avenue property and $875 paid in commissions to another agent, and in escrow and other charges and gave judgment for the difference, $12,625. From this judgment defendants against whom it was awarded appeal. At the trial appellants introduced testimony to the effect that some five years before the transaction here involved occurred, defendant Donnell placed in the care of defendant Clinch, her son-in-law, a sum of about $2,000 and that sum at the time of the escrow mentioned here, together with accumulations amounted to some $2,700; that this said sum was used in the acquiring of the Western Avenue lease; that Mrs. Donnell and Weadon were engaged to be married, but that

at some time during the transaction in which plaintiff became involved they changed their intention as to acquiring a home; that Mrs. Donnell acted in good faith throughout the transaction, and from the funds secured through the escrow at a later date purchased property of a value in excess of $10,000. The evidence as to this phase of the case as contained in the bill of exceptions is not of a very convincing nature when read as a whole, and in some instances it would appear that the testimony given by the witnesses at the time of trial differed materially from that given upon deposition prior to trial. It would seem somewhat extraordinary that a sum of $2,000 under the control of defendant Clinch required some five years to increase to $2,700, while in a few months, at most, and under the same control, and just at the time plaintiff came in contact with all of the parties, this $2,700 became something over $10,000.

Appellants' first contention is that there is no evidence to support the finding made by the trial court that defendants Clinch and Thurtle acted as agents for plaintiff at the time the leasehold was acquired and that their agency must be deemed to have been created as of April 23d, the day the exchange agreement was signed by plaintiff. This contention on the part of appellants is without merit. The evidence at best but shows a conflict and to any unbiased reader must clearly show a well-conceived plan on the part of defendants Clinch and Thurtle from the time of their first contact with plaintiff in reference to the lease, to represent her as her agents, in this transaction. The signing of the exchange agreement was the culmination of this representation of her by these defendants rather than the initiation of this agency relationship. As in all cases of this character, the evidence is of a more or less circumstantial nature, but it cannot be said that there is no evidence to support the findings nor that it is not of a substantial nature. ''Insufficiency of the evidence, before it will justify a court of appeal in refusing to accept and follow a finding of fact, must amount to a complete absence of any substantial evidence in support of the finding. A common statement of the rule on appeal is that if the evidence is conflicting, the finding will not be disturbed.'' (*City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 152, 167 [287 Pac. 496].)

■ Under the circumstances present in the instant case a written authorization was not necessary to establish the agency relationship. "Whenever an agent, imperfectly authorized in the first place, performs acts in execution of the agency which are ratified by the principal, the principal is entitled to enforce his demands against the agent for anything which the agent has received on his account." (*McBride* v. *McCartney*, 53 Cal. App. 707, 709 [200 Pac. 756, 757].) ■ That there was a duty upon the agents Clinch and Thurtle to disclose the true value of the leasehold to their principal, the plaintiff here, and that their concealment of this material fact amounted to a fraud, are facts so well established in our law as to render it unnecessary to support them by an extended citation of authorities. (*McPhetridge* v. *Smith*, 101 Cal. App. 122, 139, 140 [281 Pac. 419].)

■ Appellants next attack certain findings made by the trial court that defendants Clinch and Thurtle in effect made to plaintiff false representations of fact and that they concealed from her material matters, on the ground that there is no evidence to support such findings. With this contention we cannot agree. There is ample and substantial evidence to support these findings. "There is contained in the record here competent and persuasive evidence in support of the findings and judgment. As might be anticipated in a case of this character, the testimony is in conflict as to whether defendants made the representations charged against them, but there is nevertheless sufficient evidence of a tangible character to uphold the conclusions of the trial court, to meet the requirements as to the degree of proof required to support findings of fraud, and to establish the misrepresentations found by the court to have actually been made. *Discussion with respect to certain immaterial findings is unnecessary.*" (Italics ours.) (*Neff* v. *Engler*, 205 Cal. 484, 490 [271 Pac. 744, 747].) What has already been said herein as to certain findings attacked by appellants applies with equal force to the attack made upon the findings that defendants Clinch and Thurtle, while representing themselves as her agents to plaintiff, were in fact acting as principals, and that defendant Donnell was in fact a "dummy" employed by her co-defendants in the transaction. An examination of the other specifications of error made by

appellants fails to disclose anything that would justify this court in reversing the judgment made and entered herein.

The judgment appealed from is affirmed.

Conrey, P. J., and Houser, J., concurred.