[Civ. No. 2006. Fourth Appellate District.—November 9, 1938.]

HARRY ORFANOS, Respondent, v. THE CALIFORNIA INSURANCE COMPANY (a Corporation) et al., Defendants; C. I. T. CORPORATION (a Corporation), Appellant.

Emery F. Mitchell for Appellant.

Harry W. Horton for Respondent.

MARKS, J.—Under date of January 31, 1930, plaintiff bought, on a conditional sales contract, from Harbor Motors Company, owned by Harla High, a three-ton Reo truck for $3,117.46. This price included insurance and carrying charges. The contract was immediately transferred to the C. I. T. Corporation. It contained the following:

"I or we hereby appoint you, or in the event that this contract is assigned, then the assignee thereof, my or our attorney in fact for me or us to collect, compromise, receipt for or discharge on such terms as such attorney in fact may deem advisable, any insurance for loss, destruction, theft, embezzlement or confiscation of said property, or collision with the same, or damage thereto however caused, to which I or we may have any right, claim or interest whether under policies upon any other motor vehicle or thing whatsoever; . . ."

The C. I. T. Corporation had a blanket policy of insurance, issued by The California Insurance Company, under which all motor vehicles in which it was interested were insured through a subsequent "certificate policy" covering each vehicle. In this case a certificate policy was issued by The California Insurance Company on the Reo truck insuring the C. I. T. Corporation and Harry Orfanos against fire, theft, collision and property damage, in the sum of $2,270

from January 31, 1930, at noon, to February 1, 1931, at noon.

The certificate policy was made subject to all of the terms and conditions of the blanket policy which contained the following:

"No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all of the foregoing requirements, nor unless commenced within twelve (12) months next after the happening of the loss; provided that where such limitation of time is prohibited by the laws of the State wherein this policy is issued, then and in that event no suit or action under this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State."

The total premium of $86.48 was paid by Orfanos to the C. I. T. Corporation. The conditional sales contract was fully paid by Orfanos by the last of February, 1931. The certificate policy was not delivered to him until the last of November, 1931. The blanket policy, or a copy of it, was not given him until after May 10, 1933. The C. I. T. Corporation did not disclose to him any of its terms before that time.

Orfanos was engaged in the shipping of fish from Calexico in Imperial County to Los Angeles. On November 28, 1930, Simon Garcia, his employee, left Calexico with a load of fish which he delivered in Los Angeles. His return trip was by way of San Diego. He left the truck on a parking lot in San Diego and, under date of December 3, 1930, wrote Orfanos, "I just arrived here and I'm working so you better send somebody for the truck because I can't take it. The truck is on fourth & Market st." The parking ticket was enclosed in the letter. A few days later Orfanos sent for the truck. It had been stolen from the parking lot and was later found in Mexico. Garcia was convicted of its theft. Orfanos recovered the truck about seven months after it was stolen. It had been stripped of much of its equipment and was in bad repair. He spent about $342 in regaining possession of the truck and for new tires, and incurred a $625 repair bill to put it in running condition. He was unable to pay the repair bill and the truck was sold so that it

was a total loss to him. He testified that the value of the truck at the time it was stolen was $3,000.

He made demand on both defendants, prior to the time he took possession, that they recover possession of the truck and put it in running condition. This they refused to do.

After the truck was fully paid for the C. I. T. Corporation did not deliver the insurance policy to Orfanos. After repeated demands by the attorney for Orfanos on both defendants for all insurance policies, the C. I. T. Corporation mailed the certificate policy to the attorney. It was received about November 28, 1931. Neither the blanket policy nor a copy of it, nor a statement or summary of its terms, was ever delivered to Orfanos or his attorney. The first knowledge of its terms obtained by either of them was when The California Insurance Company filed its answer in this action, with a copy of the blanket policy attached. They then learned for the first time that it contained the proviso that suit on it must be commenced within one year from the date of the loss and that it also contained, among other things, the following definition of perils insured against:

"Theft, Robbery and Pilferage, excepting by any person or persons in the Assured's household, or in the Assured's service or employment, whether the theft, robbery or pilferage occurs during the hours of such service or employment or not; and excepting loss suffered by the Assured from voluntary parting with title and/or possession, whether or not induced so to do by any fraudulent scheme, trick, device or false pretense or otherwise, . . . "

This action was not commenced within one year from the date of the loss. The California Insurance Company defended on that ground. Judgment was rendered against both defendants in the sum of $1135. On motion for new trial the findings were modified so that The California Insurance Company was relieved from liability because the action was not commenced within one year from the time of loss. Judgment was entered in its favor for costs. No appeal was taken by plaintiff from this portion of the judgment and it has become final. The portion of the judgment appealed from is that against the C. I. T. Corporation for $1135.

It is the theory of plaintiff, and was the theory of the trial court, that the C. I. T. Corporation was made the agent of

plaintiff in the insurance matter by the express terms of the conditional sales contract; that it had knowledge of all of the terms of the blanket insurance policy issued to it, including the provision limiting the time within which to bring suit on the policy to one year after loss; that, as agent, it owed a duty to disclose to plaintiff all of the terms of the insurance policies; that as it failed and refused to do so, after demand, it was liable to plaintiff for the loss resulting by reason of the suit on the policy not being started within one year from the date of the loss; that the only reason the insurance company escaped liability was because suit was not commenced within one year from the date of loss; that Orfanos failed to recover on the policy solely because of the failure and refusal of the C. I. T. Corporation to disclose the terms of the blanket policy to plaintiff within the year and after demand so to do; that when the truck was paid for early in 1931 it was the duty of the C. I. T. Corporation to immediately deliver to Orfanos the insurance policies, or the certificate policy, and a copy or abstract of the blanket policy on the truck; that the failure to perform this duty kept Orfanos in ignorance of the one-year limitation on bringing the action which was responsible for his failure to recover on the policy.

The findings of the trial court adopted this theory in detail. The evidence and reasonable inferences to be drawn from it support these findings.

The C. I. T. Corporation seeks a reversal of the judgment on three grounds: (1) That no duty rested on it to inform Orfanos of the terms of the insurance policies or to deliver the certificate policy and a copy or abstract of the blanket policy to Orfanos; (2) That if there was such a duty resting upon it, Orfanos suffered no loss or damage from such breach of duty because the truck was stolen by an employee of Orfanos which relieved the insurer from liability under the terms of the blanket policy; (3) That the evidence fails to support the amount of damages awarded.

The conditional sales contract provided that the truck must be insured; that if Orfanos did not insure it, or insure it in an amount satisfactory to the C. I. T. Corporation, that company might insure it or have additional insurance written at the expense of Orfanos. It is clear that the insurance was

obtained by the C. I. T. Corporation and paid for by Orfanos. It is also clear that, under the conditional sales contract, Orfanos appointed the C. I. T. Corporation his agent in case of loss under the policy to make claim for and adjust the loss. It is also clear that after the loss the C. I. T. Corporation did nothing towards adjusting the loss and did not disclose to Orfanos any of the material terms of the insurance policies.

It is too well settled to need citation of authority that an agent must disclose to its principal all facts within its knowledge pertaining to the agency. The C. I. T. Corporation obtained the blanket policy and had possession of it. It is charged with notice of its terms and conditions. Under its agency it was under a duty to disclose to Orfanos the terms and conditions of this policy pertaining to the loss occasioned by the theft of the insured truck. This it did not do.

In the case of *McPhetridge* v. *Smith*, 101 Cal. App. 122 [281 Pac. 419], it was said:

" 'An agent for hire is bound to exercise a greater degree of care and diligence than an agent acting gratuitously, but the latter has no greater license to indulge in misrepresentations, concealments or other breaches of good faith than the former. . . . Even a gratuitous agent is therefore liable to his principal for damages resulting from a gross neglect of duty which he owes to his superior.' (1 Cal. Jur. 790.) And as further said in the same volume, page 805, section 91: 'In entering upon the relation of principal and agent, the principal bargains for the exercise of the skill, ability and industry of his agent, and the agent agrees that he has reasonable skill and will do the work with reasonable care.' A number of authorities are cited to support the language of the text. . . . And further, as said in 2 C. J., page 714, section 369: 'Loyalty to his principal's interest requires that an agent shall make known to his principal every material fact concerning his transactions and the subject matter of his agency that comes to his knowledge or is in his memory in the course of his agency, and if he fails to do so, he is liable in damages to his principal for any injury incurred or loss suffered in consequence of such failure.' " (See, also, *Troendle* v. *Clinch*, 125 Cal. App. 147 [13 Pac. (2d) 852].)

It follows that as the C. I. T. Corporation was under the obligation of disclosure, which it failed to perform, it should be held liable to Orfanos for the damages resulting from that breach of duty.

■ The C. I. T. Corporation asserts that Orfanos suffered no loss from its failure to disclose the terms of the blanket policy because the theft of the truck was committed by his employee and that he could not recover from the insurance carrier because the insurer was relieved from liability under such circumstances by the express terms of the insurance contract.

The trial court found that Garcia was an employee of Orfanos at the time he placed the truck in the parking lot in San Diego; that he quit that employment prior to the time he stole the truck; that when he stole the truck he was not in the employ of Orfanos. The foregoing arguments of the C. I. T. Corporation are but attacks on the sufficiency of the evidence to support these findings.

We are of the opinion that the letter written by Garcia to Orfanos under date of December 3, 1930, which is relied upon by both parties, is sufficient to support the inference that Garcia was not in the employ of Orfanos at the time of the theft. Garcia informed Orfanos that he had obtained another job; that the truck was then on the parking lot and could be obtained there by Orfanos. He enclosed the parking ticket in the letter. When he took the truck from the parking lot he did not have the ticket. This indicates that he had already mailed the letter and ticket to Orfanos. The inference follows that the truck had not been stolen at the time the letter was mailed. One of the elements of the relation of employer and employee, such as we have here, is that an employee may quit his employment. By reasonable inference, the letter notified Orfanos of an event that had already happened, namely, that Garcia had quit his employment before he stole the truck.

■ Further, the right of the C. I. T. Corporation to successfully rely upon this defense of theft by an employee depends upon its availability to the insurance carrier in defending the action against it. Speaking on the question of the availability of a defense under an exception clause

in an insurance policy, in *Carr* v. *International Indemnity Co.*, 58 Cal. App. 614 [209 Pac. 83], the court said:

"After the plaintiff had proved damage within the terms of the policy, the burden rested with the defendant to show that such loss was produced through some excepted cause. 'Where proof is made of a loss apparently within a policy, the burden is on the insurer to prove that the loss occurred from a cause for which it is not liable.' (14 R. C. L., p. 1437, par. 599; *Blasingame* v. *Home Ins. Co. et al.*, 75 Cal. 633 [17 Pac. 925]; *Dennis* v. *Union Mutual Life Ins. Co.*, 84 Cal. 570 [24 Pac. 120].)"

In the instant case the C. I. T. Corporation, which must stand in the shoes of the insurance carrier in making this defense, has not sustained the burden of proof placed upon it, to show that Garcia was in the employ of Orfanos when he stole the truck. It follows that the challenged findings cannot be disturbed here.

█ Little need be said concerning the specification of error that the evidence of damage does not support the findings of the amount of the damage or the judgment. As a result of the theft Orfanos lost his truck. He testified that at the time of the theft the truck was worth $3,000. It was insured for $2,270. As an owner is competent to place a value on his property this evidence would have sustained a judgment for $2,270. The C. I. T. Corporation cannot complain of a judgment against it for an amount less than that which the evidence would have supported.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 31, 1938, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 5, 1939.