[Civ. No. 19451.   Second Dist., Div. Three.   Nov. 4, 1953.]

CORNELIA RITA DYER, Appellant, v. D. D. WATSON, as Real Estate Commissioner, etc., et al., Respondents.

Hal Hughes for Appellant.

Edmund G. Brown, Attorney General, and Lee B. Stanton, Deputy Attorney General, for Respondents.

WOOD (Parker), J.—The real estate commissioner revoked the license of Cornelia Rita Dyer, a licensed real estate broker. She petitioned the superior court for a writ of mandate compelling the commissioner to vacate his order of revocation. The petition was denied and she appeals from the judgment.

In an accusation, filed by a deputy commissioner, it was charged that between June 1, 1950, and October 5, 1950, Cornelia Rita Dyer (hereinafter referred to as licensee), either personally or through her representatives, obtained $5.00 from each of 20 designated persons by falsely representing to them that she possessed hundreds of bona fide listings of vacant rental properties at stated rental rates in particular areas; that in each instance she should have known that the properties she referred said persons to were not for rent, or were not as represented, and therefore each sum of $5.00 was obtained under false pretenses. It was charged further therein that during the month of March, 1951, she as a licensed real estate broker caused to be published classified advertisements in the Los Angeles Examiner containing substantially the following wording: ''$1 a day and up    restricted-unrestricted    $5 fee    renters see Cornelia Dyer    L. A.'s oldest, largest most personal rental service for best rentals available at lowest cost    furnished houses and apartments''; said advertisements contained itemized lists of ''approximately 30 to 50'' purported vacancies at rental rates of $30 to $50 monthly furnished, and also represented that she was in possession of over 900 others, furnished and unfurnished; said advertisements were false and misleading and were known by licensee to be false and misleading at the time she caused them to be published. It was also stated therein that by reason of the alleged facts the licensee acted in violation of section 10176, subdivisions (a), (b) and (i), and section 10177, subdivisions (c) and (f) of the Business and Professions Code.

In a supplemental accusation it was charged that, between June 3, 1950, and July 5, 1951, the licensee obtained $5.00 under false pretenses from each of 12 persons; and that licensee's advertisements in newspapers were false and misleading. In a second supplemental accusation she was charged with 13 additional similar violations, including a charge that she violated subdivision (c) of section 10176.

After a hearing the real estate commissioner found that from June, 1950, to July, 1951 (inclusive), the licensee represented to the public at large and to 16 persons (specifically designated therein) that she possessed hundreds of bona fide

listings of vacant properties at stated rental rates in particular areas, and upon the payment of a registration fee she would furnish addresses of listings of real property which were then actually available for rental for the stated price, and if the addresses were not suitable the registrant could by telephone contact licensee's office and secure additional addresses without payment of additional fees; that in truth neither licensee nor her representatives knew whether or not said listings were actually available for rental; licensee intentionally concealed from said registrants the fact that she had no actual knowledge of the availability of said listings, and she further concealed from said registrants that licensee's telephone facilities were inadequate and long delays would be encountered in seeking to reach her office by telephone, and that they would be informed that no further listings were available; in reliance upon the representations of licensee and without knowledge of the falsity thereof 16 persons (designated therein) registered and paid to licensee the registration fee required and received addresses of listings as being available for immediate rental and when said persons called at said addresses, they were advised that said places were not available for rental and in several instances said places had not been listed with licensee; prior to the time licensee would furnish any addresses of real property represented as being available for rental purposes, licensee would enter into a written agreement with each registrant, which agreement provided in part that the service which licensee offered consisted "of referring Registrants to Landlords who have listed their vacancies with her for rent," that no guarantee is made "as to the price of rental, location or acceptance of Registrant" by landlord, nor is registrant "obliged to accept any rental not to his liking"; said provision of the written agreement was in direct conflict with the oral representations of licensee that rentals were available in particular areas at specified rents, and licensee falsely concealed said conflict from the persons contacting her; licensee's acceptance of compensation from various persons for her services in the procurement of real property for rental purposes created the relationship of principal and agent within the purview of section 10131 of the Business and Professions Code, and she had a duty to make a full and fair disclosure of all the facts as to the actual availability of the real property for rental purposes; in violation of her duty as an agent she did falsely represent to her principals that the

real properties were available for rental purposes without actually having knowledge thereof and that said false representations were made for the purpose of inducing others to enter into the principal-agency relationship with her.

The commissioner made the following determination of issues: Licensee has been guilty of violations of section 10176 of the Business and Professions Code as follows: making false promises of a character likely to influence, persuade or induce [violation of subdivision (b)]; a continued and flagrant course of misrepresentation or making of false promises through real estate agents or salesmen [violation of subdivision (c)]; conduct which constitutes fraud or dishonest dealing [violation of subdivision (i)].

Licensee alleged, among other things, in her petition for a writ of mandate that the commissioner acted without jurisdiction in revoking her license; the evidence before the hearing officer was insufficient to show that licensee violated any of said sections of the Business and Professions Code, and such evidence does not support the findings of the hearing officer or the order of revocation.

The matter was submitted upon the record of the proceedings before the commissioner. The trial court found that the commissioner did not proceed without or in excess of his jurisdiction; the findings of the commissioner are supported by the weight of the evidence; and the findings support the order of the commissioner.

Appellant (licensee) contends that the commissioner did not have jurisdiction, because appellant was not required to have a real estate broker's license to engage in the business of such rental agent. ■ Section 10131 of the Business and Professions Code provides: "A real estate broker . . . is a person who, for a compensation, . . . negotiates the purchase or sale or exchange of real estate, or who, for compensation, . . . rents or places for rent, or collects rent from real estate, or improvements thereon, for another or others."

Appellant argues that she did not, for compensation or otherwise, rent or place for rent real estate or improvements thereon; that she did not for compensation, from the landlord, rent anything or place anything for rent; that she did not rent anything, in that, she merely sold to registrants a list of names and addresses and let them seek their future landlord from such list; that she merely sold information that was selective and fitted to the price bracket and other requirements of the customer. Appellant states in her brief, in summarizing the

evidence with respect to the various transactions involved, that "in each case a customer approached your Appellant or some of her employees at her place of business, signed a contract, the effect of which is that the customer sought and paid for, and your Appellant received payment and agreed to furnish, certain information respecting rental vacancies for residential purposes." Appellant was a real estate broker and, among her employees, in her place of business there were two real estate brokers and two real estate saleswomen. In 15 of the 16 violations found by the commissioner, the prospective renters had seen appellant's rental advertisements in newspapers prior to going to her place of business. Many of the advertisements, received in evidence as exhibits, included a brief description of the rental property, a statement of the amount to be paid as rent, and the words: "Lic. Real Estate Broker   Cornelia Dyer   Lowest Fee   Best Rentals." Said renters told appellant, in effect, that they wanted to rent apartments or houses under certain terms and conditions. Each renter paid $5.00 to appellant, and appellant issued a receipt for said sum. The receipts stated, in part, that the sum was received for a certain number of days of rental service, and that the service which appellant offered "consists of referring Registrants to Landlords who have listed their vacancies with her for rent." At the top of the receipt there were words as follows: "Cornelia Dyer   Real Estate Broker   Real Estate   Rentals   Leases." The evidence shows that appellant, for compensation, placed real estate of others for rent. In the 16 transactions here involved the appellant was subject, as a real estate broker, to the jurisdiction of the real estate commissioner. In the case of *People* v. *Booth and Edwards*, decided by the Appellate Department of the Superior Court of Los Angeles County in 1952 (but not reported), defendant Edwards was charged with a misdemeanor in that she acted as a real estate salesman without a license. Booth, a licensed real estate broker, owned a business known as "City Rental Agency," and Edwards, who was not a licensed real estate salesman, was employed by him as a salesman. Lists of apartments for rent were maintained at the place of business. Edwards frequently received information from landlords about apartments for rent. The manner of conducting the business was to give a patron a list of places supposed to fit his needs, charge him a fee, and let him go to the places listed and negotiate for the rental thereof. Ed-

wards, the unlicensed salesman, conducted such a transaction with a patron. Edwards was convicted, and she contended on appeal therein that her acts did not bring her within the definition of a real estate salesman; that she merely informed prospective renters about places for rent, leaving the matter thereafter to the renters and landlords. The court therein affirmed the judgment, holding that Edwards did "place for rent" apartments listed with the agency. (The conviction of Booth, upon the ground that he aided and abetted the unlicensed salesman, was affirmed.)

Appellant also contends that the evidence was not sufficient to support the findings of the commissioner. She argues that the evidence to the effect that the places were not available or suitable for renting was hearsay in that the testimony of the complaining witnesses regarding nonavailability and nonsuitability were statements that had been made to them out of the presence of appellant. As above shown, all the prospective renters (except one) in the 16 alleged violations testified that they had seen the newspaper advertisements prior to going to appellant's place of business. Each of them testified that he told appellant or one of her agents that he wanted to rent an apartment or house under certain conditions; that he paid $5.00 to appellant and received from her listings of residential property and a receipt for $5.00.

Mrs. Leatherman testified that she told appellant's agent that she wanted a one or two bedroom house for herself and children for not more than $50 per month; the agent gave her six listings; one place had been rented a week previously and a lady told her that the agency had been notified previously; another place had been rented; two other places were single apartments; another place was a converted garage; each day for about three weeks thereafter she tried to telephone the agency but the agency's telephone was busy; later she talked with appellant who told her that she did not have time to give listings to people who had already registered but that she gave listings only to new registrants.

Mrs. Lynch testified that she told appellant's agent that she wanted to rent a two bedroom apartment for not more than $50 to $60 per month; the agent, after stating that she hoped to find a place for her, supplied her with eight listings; Mrs. Lynch went to all those places and found that seven of them had been taken and that one was a hotel at a rent of $75 per month.

Mrs. Thompson testified that she told appellant's agent that she wanted a "single" apartment for about $35 a month; the agent gave her two listings; as to one of the listings she found that there was no such address; she telephoned to the other place and a lady told her that it had been rented two weeks.

Mrs. Rexroad testified that she told appellant's agent that she wanted a three-room house—a kitchen, living-room and a separate bedroom—and not a house in the rear; the agent gave her four listings; she went to the address of one listing and it was not for rent; she went to another of the listings and it had been rented for some time; the other listing was one room and a kitchenette "in the rear"; she called the telephone number for one of the listings several times and received no answer; she received three more listings from appellant; she was informed by the owner or manager of one of said places that it had been rented for five weeks and that the agency had been told several times that it had been rented; she was informed by a man at another listing that it had been rented for two months and that he had informed appellant's agency three or four times that it had been rented; she called the telephone number at the third listing several times but received no answer; she received two more listings; she called the telephone number at one of those listings and was told that the place had been rented for a week and that appellant had been so notified; she called the telephone number at the other listing and was informed that it had been rented for some time; thereafter she received two additional listings; she called the telephone numbers for both of those listings and was informed that they had already been rented.

Eleven other witnesses gave similar statements of the unavailability or unsuitability of the places to which they were sent.

Appellant testified, in part, that in June, 1950, she registered about 800 persons for rental services; the most that she registered in any month was about 1,500; a listing is presumed to be available until cancelled definitely; when a listing is two weeks old it is discarded; each of her agents is responsible for his own cancellations of listings; it is impossible "to qualify" all of the listings, which they give out, to see whether they are still available for rent; when she has a new listing she gives it to more than one prospective tenant —she gives it to as many as ask for that price range.

The testimony that there were no addresses such as certain addresses given by appellant was not hearsay. The

testimony of witnesses, who went to various places listed by appellant, that certain places were not houses or apartments or were not in specified areas or did not have the specified number of rooms or were not downstairs or were furnished was not hearsay. Also the testimony that places were not available for renting was not hearsay.

The testimony that persons at some of the places told the registrants that the places had been rented or that appellant had been notified of such renting or that the places were not for rent or had not been listed with appellant was hearsay. Such testimony may be used, however, for the purpose of explaining the direct evidence that the registrants were unable to rent the places. The testimony was admissible, not to prove the truth of the statements made to the registrants, but to explain the evidence that the places were not available for renting. In section 11513 of the Government Code, chapter 5, entitled "Administrative Adjudication," it is provided in part: ". . . Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining any direct evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. . . ." Hearsay evidence alone is insufficient to satisfy the requirement of due process of law, and mere uncorroborated hearsay does not constitute substantial evidence. (*Walker* v. *City of San Gabriel*, 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383].) As above shown, the statute specially permitted hearsay in this proceeding before the commissioner.

The evidence as to what was said by persons at proposed rental places, with respect to nonavailability of the places for renting, was the kind of evidence on which persons who inquire for rental property are accustomed to rely. Such hearsay evidence did not stand alone and was not uncorroborated. Appellant testified that she was doing business with a tremendous number of people, she registered several hundred persons per month, it was impossible to check all the listings to see whether they were still available, and she presumed that all the listings handed out by her office were available. Furthermore, irrespective of the hearsay evidence, the direct and nonhearsay evidence, above referred to, to the

effect that many of the places to which the registrants were referred were nonexistent or were not the kind of property specified by the registrants, was sufficient to support the order of the commissioner, Appellant was the agent of the prospective renters and she charged and received from each of them $5.00 for furnishing information regarding rental property. ■ As a real estate broker, and as such agent, it was her duty to disclose to them that she did not know whether the places to which she referred them were available for renting and that she was merely presuming that the places were available. When the hearing officer asked her if she instructed her agents to tell the registrants that the property was just presumed to be available, she replied "Our contract covers, that"—it "sets forth very particularly that we take no responsibility for prior rentals." Her reply was stricken out as not being responsive, and then she said that she instructed her agents to tell the registrants that the properties are presumed to be available. `As above shown, many of the registrants testified that they had seen appellant's advertisement in a newspaper prior to going to her office. The advertisement recited in part "renters see Cornelia Dyer . . . for best rentals available." Those registrants, upon arriving at the office, told appellant or her agents what kind of property they wanted to rent, and they paid the registration fee. Thereupon appellant or her agents gave the registrants certain addresses. The commissioner found, as above stated, that appellant intentionally concealed the fact that she had no actual knowledge of the availability of said places for renting; that the provision of the written agreement (to the effect that no guarantee is made as to price of rental, location or acceptance of registrant) was in direct conflict with the oral representations of appellant that rentals were available in particular areas at specified rents; and that in violation of her duty as an agent she did falsely represent to the registrants that the real properties were available for rental purposes without actually having knowledge thereof. The trial court properly found that the findings of the commissioner were supported by the weight of the evidence.

Section 10176 of the Business and Professions Code provides, in part: "The commissioner may . . . revoke a real estate license . . . where the licensee . . . has been guilty of . . . (b) Making any false promises of a character likely to influence, persuade or induce. (c) A continued and flag-

rant course of misrepresentation or making of false promises through real estate agents or salesmen. . . . (i) Any other conduct . . . which constitutes fraud or dishonest dealing." As above stated, the commissioner found that appellant had violated said subdivisions of section 10176. Appellant asserts that said subdivisions (c) and (i) of said section 10176 fail, by reason of their uncertain language, to comply with the Constitution of California, particularly article IV, section 24. She states, in her brief, that said section of the Constitution provides that "all law shall be couched in such language as may be readily understood." █ That section of the Constitution provides, in part: ". . . all laws of the State of California, and all official writings, and the executive, legislative, and judicial proceedings shall be conducted, preserved, and published in no other than the English language." The language of said subdivisions (c) and (i) of section 10176 of the Business and Professions Code is not uncertain, and those sections comply with said article IV, section 24, of the Constitution. In *Denny* v. *Watson*, 114 Cal.App.2d 491 [250 P.2d 692], the petitioners sought a writ of mandate directing the real estate commissioner to vacate his order revoking their licenses as real estate brokers. The petitioners therein challenged the constitutionality of section 10176, subdivision (i), of the Business and Professions Code and asserted that it violates due process of law guaranteed by the state and federal Constitutions. The court therein held (p. 495) that said subdivision was constitutional, and said at page 493: "Undoubtedly the Real Estate Commissioner was empowered to determine whether petitioners were guilty of acts involving dishonest dealings."

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.