[Civ. No. 53915. Second Dist., Div. Five. Aug. 14, 1979.]

MILTON S. KATZ, Plaintiff and Appellant, v.
DEPARTMENT OF REAL ESTATE, Defendant and Respondent.

**COUNSEL**

Ruman & Spizer and I. Richard Ruman for Plaintiff and Appellant.

George Deukmejian, Attorney General, Arthur C. de Goede, Assistant Attorney General, and Richard W. Bakke, Deputy Attorney General, for Defendant and Respondent.

## OPINION

KAUS, P. J.—Appellant Milton S. Katz appeals from a judgment denying his petition for a peremptory writ of mandate.

At all relevant times, Katz was licensed as a real estate broker by respondent Department of Real Estate of the State of California.

In early 1975, Katz purchased a residential dwelling in Sylmar, California, for $10,000. At the time he entered into the transaction, Katz knew that the Los Angeles County Department of Building and Safety had issued an "Order to Comply"[1] for the property which set forth four Municipal Building Code violations, directing compliance with specific municipal court sections and declared that an illegal eight- by twenty-four-foot room must either be brought up to code or demolished.

Thereafter, Katz advertised the property as a "fixer-upper" and offered it for sale on an "as is" basis. Pursuant thereto, Homer McGregor, along with one C. A. Young, his real estate agent, inspected the property. Young saw that the bathroom lacked ventilation and that an electric meter box was located inside the structure. He recognized both conditions to be building code violations. However, neither Young nor McGregor noticed the absence of an electrical drop line, which line had been removed by the city building department pursuant to its determination that the property violated code.

Young, acting on McGregor's behalf, negotiated the purchase of the property for $12,300. Katz caused the escrow instructions to refer to the "as is" condition of the property and he expressly disclaimed therein any warranties "as to any condition having to do with city regulations or zoning or any other municipal conditions applying to the subject property." However, at no time before the sale closed did Katz notify either McGregor or Young of the city's "Order" or its contents. Further, neither McGregor nor Young indicated an independent awareness thereof. Consequently, induced by Katz' concealment, McGregor took title unaware of the "Order."

McGregor's daughter and her three young children moved into the property shortly after the closing. The "Order" came to the McGregors' attention a few days later, when the daughter made application for and

---

[1]See appendix "A."

was refused electrical and water services. Although the family remained in the premises, services were withheld until McGregor complied with the "Order" some three and one-half months later. In the interim, Katz offered to rescind the sale; McGregor declined the offer, however, when he learned that Katz refused to compensate him for the time and expenses already incurred in conforming the property.

On March 5, 1976, by way of accusation, the department instituted disciplinary proceedings against Katz, alleging that he had materially misrepresented the property to McGregor by failing to inform him of the code violations, and that had McGregor known the true facts he would not have purchased the property or would not have purchased it at the price he paid for it.

An administrative hearing started October 19, 1976.[2] At the conclusion thereof, the hearing officer found that cause had been established for disciplinary action against Katz under Business and Professions Code section 10177, subdivisions (f) and (j); he proposed a 45-day license suspension on each count.

Business and Professions Code section 10177 states in pertinent part: "The Commissioner may suspend or revoke the license of any real estate licensee, . . . who has done any of the following: . . . (f) Acted or conducted himself in a manner which would have warranted the denial of his application for a real estate license. . . . (j) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing. . . ."[3]

The department, while respecting the above findings, declined to adopt the hearing officer's proposed decision. Instead, it revoked Katz' broker's license with the provision that, upon application and payment of the fee therefor, he would be issued a restricted license pursuant to Business and Professions Code section 10156.5, 45 days from the order's effective date.

---

[2]McGregor died before the hearing. Appellant contends the department "abused its discretion by delaying the proceedings," suggesting a scheme designed to "[prevent] a fair trial" by denying him an opportunity "to cross-examine the buyer." We reject this assertion: there is absolutely no evidence to suggest the department was even aware of McGregor's pending death, let alone that it consciously acted to subvert justice.

[3]Both subdivisions are constitutionally certain. (*Dyer* v. *Watson* (1953) 121 Cal.App.2d 84 [262 P.2d 873]; *Denny* v. *Watson* (1952) 114 Cal.App.2d 491 [250 P.2d 692].)

Katz then petitioned for a writ of mandate in the trial court; on the department's opposition the petition was heard and denied. This appeal ensued.

The central issue herein, as framed by Katz, is whether the court erred in finding him guilty of fraudulent conduct. ■ In this regard, both parties rely heavily on *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 735-736 [29 Cal.Rptr. 201, 8 A.L.R.3d 537] which states: "It is now settled in California that where the seller [of real property] knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.] Failure of the seller to fulfill such duty of disclosure constitutes actual fraud. [Citations]."

■ Initially, Katz contends that the record lacks substantial evidence of his failure to notify either McGregor or Young that an "Order to Comply" existed. The argument is frivolous, however, for he admitted as much when he testified that he "didn't have to tell [Mr. Young of the condition of the property]" because "[h]e knew," but that nonetheless he "supplied" Mr. Young with the information by asking him "if he was aware of the fact that there were violations on the property" and receiving Mr. Young's "indica[tion] [that] he was satisfied with the way it was." Effective notice entails more than elliptical obfuscation.

Katz' several attempts to distinguish *Lingsch* are fruitless. First, he asserts that he was under no duty of disclosure because he "had no knowledge that [the material] facts were not known to Young . . ." The argument fails, however, because Young never gave any indication that he was aware of the fact that the structure had been in effect condemned. As such, Katz' putative contrary belief was simply unreasonable; under such circumstances, his silence may be neither condoned nor justified.

Next, he maintains that in light of the ease with which Young could have obtained knowledge of the order, we must conclude the facts were within his "diligent reach." This argument is similarly infirm, for facts not visibly apparent are not necessarily within the buyer's purview. (See, for example, *Curran v. Heslop* (1953) 115 Cal.App.2d 476 [252 P.2d 378].)

■ In the alternative, Katz concedes his lack of candor, but contends that it is legally immaterial because Young and McGregor were under a duty to make an independent investigation of the state of the property. This duty, he insists, was compelled by two factors: (1) the parties' understanding that the property was being sold "as is"; and (2) his express disclaimer of warranties relating to municipal regulations. We disagree. An "as is" provision, "generally speaking, . . . means that the buyer takes the property in the condition visible to or observable by him. [Citations]." (*Lingsch* v. *Savage, supra,* at p. 742.) "It . . . does not in itself protect . . . or absolve [a seller] from liability for . . . passive concealment." (*Driver* v. *Melone* (1970) 11 Cal.App.3d 746, 752 [90 Cal.Rptr. 98].) Accordingly, there exists no reason why McGregor should have taken the provision to mean that he relied on Katz' silence at his own peril. Further, since a principal under a positive duty to make a disclosure "cannot escape liability for his failure to do so by relying on a provision in the agreement of sale that there are no other representations except those therein expressed. [Citations]." (*Lingsch* v. *Savage, supra,* at p. 743), Katz' later position is similarly unavailing.

In light of the foregoing, we also dismiss Katz' assertion that the trial court erred in failing to either take or order the administrative hearing officer to take additional testimony on the question whether Young "should reasonably have concluded from the use of the . . . terms ['as is' and 'fixer-upper'], in addition to his own inspection, that the property was in such a deplorable state that appellant would take no responsibility therefor."

■ Finally, Katz contends that revocation of his license was an excessive penalty and a departmental abuse of discretion (see *Lake* v. *Civil Service Commission* (1975) 47 Cal.App.3d 224 [120 Cal.Rptr. 452]) because of the "uncertain state of the law" with regard to the sale of "as is" property, and because "it failed to take into mitigation . . . [his] offer of rescission." The suggestion is meritless: as for the former proposition, we are unaware of—and Katz himself fails to cite—any authority contradicting or substantially modifying the exposition set forth in *Lingsch, ante,* and its progeny, and summarized *supra.* Secondly, we find Katz' offer to "rescind,"—but not to compensate McGregor for the expenditures made by him in bringing the property up to code—at best an excessively dubious factor in mitigation, at worst a patent attempt to reap a windfall. Certainly, as an act of contrition it leaves much to be desired.

Under the circumstances, the department acted well within its discretion.

There was no error.

Affirmed.

Ashby, J., and Hastings, J., concurred.

APPENDIX A

| JOB ADDRESS 14578 Polk Street | JOB ORDER |
|---|---|

**Department of Building and Safety**
**City of Los Angeles**        **ORDER TO COMPLY**

**G  53940**

DATE  11-14-74        TIME

DELIVER ORDER TO
Mr. Milton Katz
    c/o Leonard Alexander
ADDRESS  Cohen, Alexander, Bryan & Clayton
    273 E. Thousand Oaks Boulevard
CITY  Thousand Oaks        STATE Calif.

PLANS  Required
PERMIT NO.  Required
INVESTIGATION FILE  Bldg.,Elec.,Plbg.
REFER TO PREVIOUS ORDER NO.  P81333

ORDER RECEIVED BY:

You are hereby ordered to comply with the following requirements of the Los Angeles Municipal Code and other laws as specified on or before ..... December 3, ..... 1974..

1. Demolish and remove the illegal 8'x24' room addition at the rear of the dwelling or file plans, obtain a building permit, expose all covered work, call for inspection and make comply with the L.A. Municipal Code. Sections 91.0102, 91.0103, 91.0201, 91.0207, 91.0306 and 91.0309 L.A. Municipal Code.

2. Obtain an electrical permit for all electrical wiring and equipment which has been installed without inspection and/or permit, expose all concealed work and call for inspection.  Section 93.9201, 93.9306.

3. Obtain a plumbing permit for repair of sewer line broken within 2 ft. of illegal addition.  Section 94.10201 L.A. Municipal Code.

4. Remove and maintain the property free and clear of all debris which may create a fire hazard.  Section 91.4931 L.A. Municipal Code.

782-6125, Ext. 245

**THIS ORDER MUST BE PRESENTED WHEN CONTACTING DEPARTMENT**
(See Reverse Side For Additional Information)

cj

DIVISION  INVESTIGATION        DIST.  VN        INSPECTOR  ROBERT BARTON

B&S C-11