[No. D002256. Fourth Dist., Div. One. Nov. 18, 1985.]

PHILIP MICHAEL CHODUR, Plaintiff and Appellant, v.
JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc.,
Defendant and Respondent.

**COUNSEL**

William L. Fischbeck and Fischbeck & Welch for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Neal J. Gobar, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**LEWIS, J.**—Philip Michael Chodur appeals the judgment denying his petition for peremptory writ of mandate directed to Real Estate Commissioner James A. Edmonds, Jr. (Commissioner), seeking to set aside the Commissioner's order revoking Chodur's real estate broker's license subject to a right to apply for a restricted license. Chodur claims: (1) Business and Professions Code[1] section 10177, subdivision (j), is unconstitutionally vague under the Fourteenth Amendment; (2) the facts do not support the conclusion of violation of the statute; (3) the failure to perform a contractual promise made in good faith does not constitute "dishonest dealing"; and (4) the court erred in determining the evidence did not establish the existence of mitigation.

We hold: (1) Section 10177, subdivision (j), is not unconstitutionally vague; (2) substantial evidence supports the findings of the trial judge; (3) the findings of the trial judge support the conclusion of violation of the statute for "dishonest dealing"; (4) the Commissioner did not abuse his discretion by revoking Chodur's license and providing for issuance of a restricted license.

### FACTS

Chodur held a real estate broker's license since 1976 and did business as Sunland Realty Services. In August 1980, he agreed to sell real property he owned to Mr. and Mrs. Wallace Van Pelt. The parties signed an all-inclusive promissory note secured by an all-inclusive trust deed. The note was for $90,000 of the $93,500 total purchase price. Initial payments to Chodur were $900 per month, then $967 per month commencing in December 1980. These payments, but for an approximate $30 difference in the first three months, matched the payments due on underlying notes. The all-inclusive note listed two underlying notes, secured by deeds of trust, of $63,200 to American Savings and Loan and $27,059.88 to Olin H. and Barbara A. Towler. The first note and trust deed contained a clause enabling the lender to declare all sums immediately due and payable if all, part of the property, or an interest in it were sold or transferred without the lender's prior written consent. The second note and deed apparently did not contain a similar clause. The all-inclusive note provided: "By Payee's [Chodur's] acceptance of this Note, Payee agrees that, provided Maker [Van Pelts] is not in default under the terms of this Note, Payee shall pay all installments of principal and interest which become due under the terms of the Underlying Note(s).

---

[1]All statutory references are to the Business and Professions Code unless otherwise specified.

. . . Should Payee default in any of the installments as to the payment of the Underlying Note(s) secured by the Underlying Deed(s) of Trust, the Maker may make said payments directly to the holder of such Underlying Note(s). . . ."

Beginning in September 1980, the Van Pelts paid their monthly installments by mailing checks to Chodur at Sunland Realty Services. They last paid him in June 1982, when they sent both the June and July payments. Chodur paid the $567 due for June and July on the first underlying trust deed, but did not pay the $400 due each month on the second to the Towlers. He used the $800 for construction expenses on houses he was completing at the time.

When contacted by the holder of the second note, Chodur asked for time to make the payments. He provided information about the refinancing of one of the houses and asked Mr. Towler to speak to the loan officer. However, Mr. Towler filed notice of default shortly thereafter. Mr. Van Pelt received this notice from the title company. He ceased making payments to Chodur and later spent roughly $3,000 to take the property out of foreclosure. Later, Chodur offered to reinstate the loan and pay costs if the Van Pelts would make up their delinquent payments with him. In settlement of their dispute, the Van Pelts accepted a reconveyance of Chodur's interest in the property. They withdrew the complaint they had filed with the Department of Real Estate; the department, however, instituted disciplinary proceedings against Chodur.

At the hearing, the administrative law judge (ALJ) took evidence, made findings of fact and a determination of issues, and prepared a proposed decision and order for the Commissioner's approval. The ALJ found grounds for suspension or revocation of Chodur's license pursuant to section 10177, subdivision (j), dishonest dealing; her recommended order revoked Chodur's broker's license.

The Commissioner modified the order to provide for the issuance of a restricted broker's license upon application. The Commissioner adopted the remainder of the proposed decision as his decision to become effective February 22, 1984. On February 22, Chodur filed with the superior court a "Petition for Writ of Mandate and Application for Stay of Administrative Decision." At the hearing, the court found a sufficient showing of misconduct i.e., dishonest dealing, and an appropriate assessment of discipline in the form of the restricted license. The court issued judgment denying the writ of mandate, and Chodur appealed.

I

■ Chodur contends section 10177, subdivision (j)'s use of the term "dishonest dealing" is unconstitutionally vague and thus violative of the due process requirements of the Fourteenth Amendment.[2] We disagree and hold that dishonest dealing is not an unconstitutionally vague standard with which to assess license suspension or revocation under the real estate act.

Most recently in *Katz v. Department of Real Estate* (1979) 96 Cal.App.3d 895, 899 [158 Cal.Rptr. 766], at footnote 3, the Court of Appeal affirmed the constitutional certainty of section 10177, subdivision (j). The court relied on decisions in *Dyer v. Watson* (1953) 121 Cal.App.2d 84, 94 [262 P.2d 873], and *Denny v. Watson* (1952) 114 Cal.App.2d 491, 495 [250 P.2d 692], upholding the constitutionality of the same language used in section 10176, subdivision (i). (See also *Realty Projects, Inc. v. Smith* (1973) 32 Cal.App.3d 204, 212 [108 Cal.Rptr. 71].)

We follow these decisions and reject Chodur's contention "dishonest dealing" is a term without a definition, standard, or common understanding. It seems incapable of *exact* definition because of the infinite variety of circumstances which affect the relations of people in our society. (*Wayne v. Bureau of Private Investigators & Adjusters* (1962) 201 Cal.App.2d 427, 436 [20 Cal.Rptr. 194].) Therefore, "[i]t would be almost impossible to draft a statute which would specifically set forth every conceivable act which might be defined as being dishonest." (*Id.*, at p. 440.) Nonetheless, California courts have considered the term dishonesty within various statutory schemes and have relied on the common understanding as described in *Hogg v. Real Estate Commissioner* (1942) 54 Cal.App.2d 712, 717 [129 Cal.Rptr. 709], involving fraud, deception; betrayal, faithlessness; absence of integrity; a disposition to cheat, deceive, or defraud. (See *Small v. Smith* (1971) 16 Cal.App.3d 450, 456 [94 Cal.Rptr. 136]; *Midway School Dist. v. Griffeath* (1946) 29 Cal.2d 13, 18 [172 P.2d 857]; *Taylor v. Bureau of Private Investigators* (1954) 128 Cal.App.2d 219, 228 [275 P.2d 579]; *Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 718-719 [85 Cal.Rptr. 762]; *Catricala v. State Personnel Bd.* (1974) 43 Cal.App.3d 642, 648-649 [118 Cal.Rptr. 89].) Chodur has not carried his burden of showing the inappropriateness of such a standard. "Dishonest dealing" is not void for vagueness either on its face or in application to the instant case.

---

[2]Section 10177 provides, in part: "The Commissioner may suspend or revoke the license of any real estate licensee, or may deny the issuance of a license to an applicant, who has done any of the following:

". . . . . . . . . . . . . . . . . .

"(j) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing."

It is difficult to believe Chodur could not appreciate in advance that his proposed conduct would constitute "dishonest dealing." (Cf. *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 512-513 [102 Cal.Rptr. 758, 498 P.2d 1006].)

## II

 Chodur challenges the court's finding that he became a fiduciary when he agreed to accept and make the payments. Our review of the factual findings by the trial judge is limited to the question of whether such findings are supported by substantial evidence. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) We hold there was substantial evidence to support this finding.

The trial court examined the administrative record which contained as an exhibit the all-inclusive note and trust deed signed by the parties. The note provided Chodur would make all payments on the underlying notes if the Van Pelts would make their payments to him. The record also included as an exhibit a declaration to the Department of Real Estate signed by Chodur. He declared: "I began collecting the payments on the above A.I.T.D. from the Van Pelts on or about September 25, 1980. I would then *forward* the respective payments from the Van Pelts to the underlying lien holders as agreed." (Italics added.) Chodur does not dispute the existence or terms of this agreement, and he testified to the agreement before the ALJ.

All of the above constitutes substantial evidence for the trial court's finding that he was a fiduciary as a result of such agreement. The evidence establishes his function as an agent for the Van Pelts in making the payments on the underlying note;[3] this in turn establishes a fiduciary relationship between the parties. An agent is a fiduciary. (*Kinert* v. *Wright* (1947) 81 Cal.App.2d 919, 925 [185 P.2d 364].) His obligation of diligent and faithful service is the same as that of a trustee. (*Twomey* v. *Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 709 [69 Cal.Rptr. 222]; Civ. Code, § 2322, subd. 3; Rest.2d, Agency, § 13.)

Chodur also challenges the court's finding that he failed to give notice to the Van Pelts and avoided disclosure, contrary to his fiduciary duties. He claims he was not obligated to make any disclosures of fact which he failed to make.

---

[3]Chodur denies he acted in his licensed capacity as agent for the Van Pelts in the sale. This does not, however, affect his function as agent for the Van Pelts in making the payments.

The evidence supporting the finding Chodur was a fiduciary constitutes substantial evidence to support this finding of nondisclosure. ■ An agent as fiduciary is required to disclose to his principal all information he has relevant to the subject matter of the agency. (*Orfanos* v. *California Insurance Co.* (1938) 29 Cal.App.2d 75, 80 [84 P.2d 233]; *Jolton* v. *Minster Graf & Co.* (1942) 53 Cal.App.2d 516, 522 [128 Cal.Rptr. 101].) ■ Chodur admitted he did not notify the Van Pelts of the nonpayment and impending notice of default. As the trial court noted, the Van Pelts could not pay the underlying notes directly to the holders unless they knew Chodur was not making payments. The Van Pelts did receive notice of default from the Towlers after foreclosure was initiated. They in turn had to rescue the property from the foreclosure proceedings.

## III

■ Chodur contends the failure to perform a contractual promise made in good faith does not constitute dishonest dealing. We examine this as a question of law (cf. *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 74, fn. 7 [64 Cal.Rptr. 785, 435 P.2d 553]) and hold the findings of the trial court and of the Commissioner do support the conclusion of dishonest dealing in violation of section 10177, subdivision (j).

Chodur argues a finding of dishonest dealing requires the elements of fraud or deception. He relies on *Brecheen* v. *Riley* (1921) 187 Cal. 121 [200 P. 1042], and *Small* v. *Smith, supra,* 16 Cal.3d 450. *Brecheen* and *Small* found dishonest dealing on the grounds, respectively, of false representation and embezzlement, and acceptance of payments under a sales contract after receipt of notice of forfeiture.

Fraud and deception do validly constitute dishonest dealing. (See, e.g., *Kateen* v. *Department of Real Estate* (1985) 169 Cal.App.3d 481 [215 Cal.Rptr. 295]; *Katz* v. *Department of Real Estate, supra,* 96 Cal.App.3d 895.) However, Chodur fails to recognize that dishonest dealing may encompass more than just fraud or deception. As the Court of Appeal noted in *Hogg* v. *Real Estate Commissioner, supra,* 54 Cal.App.2d 712, at page 717, " '[d]ishonesty' necessarily includes the element of bad faith . . . [which] means fraud, deception, *betrayal, faithlessness.*" (Italics added.) It "denotes an *absence of integrity.*" (Italics added; see also *Catricala* v. *State Personnel Bd., supra,* 43 Cal.App.3d 642, 649; *Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 719; *Rhoades* v. *Savage* (1963) 219 Cal.App.2d 294, 298-300 [32 Cal.Rptr. 885].)

When Chodur breached the fiduciary duties he held as agent for the Van Pelts in paying the underlying notes, he evidenced bad faith, lack of integ-

rity and faithlessness which constitute dishonesty and dishonest dealing. He was without any good faith claim to the $800, as was sufficient in *Hogg, supra* (54 Cal.App.2d 712, at p. 718) to compel a finding of no dishonesty. By his own admission and on uncontroverted evidence, Chodur intentionally omitted making the two payments and used the money for his own benefit for matters unrelated to his agreement with the Van Pelts. (See *Wayne* v. *Bureau of Private Investigators & Adjusters, supra,* 201 Cal.App.2d 427, 437.) He did not notify the Van Pelts so that they could pay the note holder directly before the filing of any notice of default.

Chodur cannot whitewash his actions by casting his duties solely in contractual terms. Payment of the underlying notes was not an unrelated personal debt but rather was the purpose for which the Van Pelts paid him on the all-inclusive note. Avoidance of the due on sale clause in the first note was the likely motivation of both parties. We decline to require a finding of fraud or deception in order to sustain the conclusion of dishonest dealing in violation of section 10177, subdivision (j), particularly in a case such as this where a fiduciary relationship gives rise to a duty to disclose.

In making her determination of issues, the ALJ relied particularly upon two findings:

### "VII

"Respondent Chodur collected monthly payments on the all inclusive deed of trust from the Purchasers starting on or about September 25, 1980 and continuing through June 28, 1982. The last payment from Purchasers included the June and July, 1982 payments. Respondent paid each monthly payment to the lienholders, with the exception of the June and July, 1982 payments on the second trust deed. Payments on the second trust deed came to $400 a month.

### "VIII

"Respondent used the June and July, 1982 second trust deed payments for his own purposes without the knowledge and consent of the Purchasers. Respondent, then engaged in the construction of houses, diverted the Purchasers' June and July, 1982 payments by using them to pay bills incurred in his construction business. Such conduct constitutes dishonest dealings." These findings, along with those of the trial court that Chodur became a fiduciary as a result of the agreement and failed in his obligations, support the conclusion of dishonest dealing. There is more involved here than simply a breach of contractual duty.

### IV

Finally, Chodur alleges the court erred in determining the evidence did not establish the existence of mitigation, and thus finding that the record

provided support for the revocation of appellant's license. ■ The standard of review of a penalty imposed by an administrative agency is the clear abuse of discretion standard. (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 287, 291 [341 P.2d 296].) ■ We are limited to inquiring whether the Commissioner clearly abused his discretion in ordering the revocation of Chodur's license and the issuance of a restricted license on application. We hold he did not.

Chodur urges an exception to the rule that the determination of the penalty to be imposed by an administrative agency lies with the agency. In *Tushner* v. *Savage* (1963) 219 Cal.App.2d 71, 82 [33 Cal.Rptr. 247], the court recognized such an exception when some charges which result in a finding of guilt are unsupported by the evidence and the court cannot determine whether the same penalty would have been imposed had the agency recognized the insufficiency of evidence. That is not true in the present case. The ALJ found Chodur engaged in dishonest dealing; the trial court and this court have affirmed the sufficiency of the evidence to support the findings and the findings to support the conclusion. *Tushner* is inapposite.

■ We are not free to substitute our own discretion as to the appropriate penalty, nor can we interfere with the imposition of a penalty by an administrative tribunal should we determine the penalty appears to be too harsh. (*Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901].) Such interference is only sanctioned when there is an arbitrary, capricious, or patently abusive exercise of discretion. (*Ibid.*)

■ In the present case, the ALJ recommended revocation of Chodur's license. The Commissioner, however, amended the penalty to provide for the issuance of a restricted license upon application. That license would not confer any property right in the privileges exercised thereunder and would not include the right to renewal. The Commissioner's decision provided that without a hearing he could suspend Chodur's privileges under the license pending hearing and determination. (§ 10156.7.) The Commissioner also provided for suspension of the license prior to hearing: (1) should Chodur be convicted or plead no contest to a crime bearing a significant relation to his fitness or capacity as a real estate licensee; (2) should the Commissioner have satisfactory evidence that Chodur violated provisions of certain laws, regulations of the Commissioner, or conditions attached to the restricted license. Finally, the Commissioner required Chodur to report in writing as might be directed concerning his activities as a licensee. As the trial judge noted, these limitations in effect amount to probation.

We recognize Chodur had no prior disciplinary record. We also recognize he made offers to reinstate the loan and to absorb the costs if the Van Pelts

would make their payments to him current. However, this was after the Van Pelts had paid to take the property out of foreclosure. Chodur did reconvey his interest in the property to the Van Pelts as a settlement.

Nonetheless, in light of all the circumstances, we cannot say the Commissioner's determination was so clearly against reason as to constitute an arbitrary, capricious, or patently abusive exercise of discretion. (*Brown* v. *Gordon, supra,* 240 Cal.App.2d 658, 667.) The penalty does not completely deprive Chodur of license privileges. The Commissioner deemed the penalty proper and commensurate with the gravity of the offense and the public interest.

Reasonable minds can differ as to the propriety of this penalty. The fact that reasonable minds may differ fortifies the conclusion there was no abuse of discretion. (*Lake* v. *Civil Service Commission* (1975) 47 Cal.App.3d 224, 228 [120 Cal.Rptr. 452].)

Judgment affirmed.

Kremer, P. J., and Staniforth, J., concurred.